**IN THE UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF FLORIDA
PENSACOLA DIVISION**

**ACTION OUTDOOR ADVERTISING JV, LLC,**

          **Plaintiff,**

**v.**

                                      **Case No. 3:03cv426/MCR**

**CITY OF DESTIN, FLORIDA,[1]**

          **Defendant.**
_____/

## O R D E R

    Plaintiff Action Outdoor Advertising JV, LLC ("Action Outdoor") sues defendant City of Destin, Florida ("Destin" or "City") challenging the constitutionality, validity, and equal enforcement of Destin's sign ordinance.  Presently before the court and ripe for review are the parties' cross motions for summary judgment[2] (docs. 95, 99; memoranda and evidentiary materials in support at docs. 96, 97, 98, 101), and responses in opposition (docs. 103, 105).  Also pending is Destin's motion to strike the affidavit of Action Outdoor's corporate representative (doc. 106), which motion Action Outdoor opposes (doc. 107).  Additionally, the parties submitted supplemental authority (docs. 114, 120, 129) and, pursuant to the court's request, supplemental briefs (docs. 121, 122, 123).  Upon consideration of the parties' written and oral arguments,[3] for the reasons that follow the

---

[1]    By order dated July 1, 2004, the court granted Destin's unopposed motion to dismiss two other defendants, Jill Silverboard, in her official capacity as city manager, and Larry Ballard, in his official capacity as chief building official. (Doc. 75).

[2]    Action Outdoor moves for partial summary judgment, seeking judgment only as to those counts which request injunctive or declaratory relief preserving for trial its demands for monetary damages and attorneys' fees.

[3]    The court heard oral argument on the motions May 31, 2005.

court denies Destin's motion to strike, grants Destin's motion for summary judgment, and denies Action Outdoor's motion for partial summary judgment.

## BACKGROUND

## Facts and Procedural History

The following facts are recited in the light most favorable to the plaintiff or, except as noted, are undisputed.[4]  Action Outdoor is a Georgia limited liability company which owns and operates billboard structures in Georgia and Alabama.  (Doc. 98, ¶ 1).  The City of Destin is a coastal town located in Okaloosa County, Florida, which regulates outdoor signs within its corporate limits.  The Zoning Regulation of the City of Destin establishes, <u>inter alia</u>, zoning districts and the type of outdoor signs which are permitted within those districts.  More specifically, the Zoning Regulation permits the placement of off-site signs[5] in Destin's "business-tourism" zone.[6]  Ordinance 245 ("the old sign ordinance"), in relevant

---

[4]      The court must view all evidence in the light most favorable to the non-moving party. <u>See</u> <u>Adickes v. S.H. Kress & Co.</u>, 398 U.S. 144, 158-59, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970).  In this case, both parties have moved for summary judgment.  Because the court concludes that Destin's motion for summary judgment should be granted, it considers the facts in the light most favorable to Action Outdoor; the court observes, however, that what are stated as "facts" herein for purposes of summary judgment review may not be the actual facts. <u>See</u> <u>Montount v. Carr</u>, 114 F.3d 181, 182 (11th Cir. 1997).

The court draws the facts it recites from Plaintiff's Statement of Material Facts as to Which There are No Genuine Issues to Be Tried (doc. 98), Plaintiff's Brief in Response to Defendant's Statement of Facts (doc. 103), the Brief in Support of Plaintiff's Motion for Partial Summary Judgment (doc. 96), and the pleadings, depositions, affidavits, and other evidentiary materials referenced therein.  The court also cites certain documents attached to Destin's memorandum in support of summary judgment. (Doc. 101).

[5]      "Off-premises" or "off-site" signs, as referred to by the parties and the court, are those identifying or advertising a business or activity which is not located on the property where the sign is located. <u>See</u> <u>Metromedia, Inc. v. San Diego</u>, 453 U.S. 490, 503, 101 S.Ct. 2882, 69 L.Ed.2d 800 (1981) (plurality opinion).

[6]      Action Outdoor refers to and has submitted a "true and correct copy of the Zoning Regulation of the City of Destin . . . ." (Doc. 98, ¶ 7 and exh. B).  Section 21-187(11)(e) of this document provides that off-site signs are permitted in the "business-tourism" zoning district.

The editor's note located at the end of § 21 indicates that as of June 1, 1997, this section apparently was superseded by Land Development Code § 7.12.01.  The court was unable to locate a copy of § 7.12.01 in the record.  According to an allegation made in the amended complaint, however, § 7.12.01 provides that off-site signs are permitted throughout the business-tourism zoning district. (Doc. 66, ¶ 65).  Destin apparently does not dispute that the language of § 7.12.01, as did § 21-187(11)(e), permits outdoor advertising signs in the business-tourism zone. (Doc. 101 at 35).  For summary judgment purposes, therefore, the court accepts that the relevant zoning regulation (whether § 7.12.01 or § 21-187(11)(e)), permits outdoor advertising signs in the business-tourism zone located in Destin.

part governs restrictions on the content, size, location, etc., of outdoor signs; Ordinance 245 was enacted in 1993 and has been amended several times, including in 1995 and 1996.[7] (Doc. 101, exh. 8).  It remained in effect until October 2003, when Destin repealed it and enacted a new sign code, Ordinance No. 03-10-LC ("the revised sign ordinance").[8] (Doc. 101, exh. 6).

In the spring of 2003 Action Outdoor entered into lease agreements with several Destin landowners which authorized the company to erect signs on five properties located in the business-tourism zone along Highway 98 East within the City's corporate limits.  (Id., ¶¶ 2, 4, 5).   Action Outdoor submitted five applications to the City on April 9, 2003, requesting permits for the construction on each of the properties of one billboard sign measuring 378 square feet in size and 50 feet in height.  (Doc. 97, ¶¶ 5, 6).[9]  By letter dated April 21, 2003, Destin informed Action Outdoor that its applications were incomplete and required certain corrections before the City would commence its review process.  (Doc.

---

[7]     Primarily at issue in this case are Sections IX and XII of Ordinance 245.

Section XII was last amended in 1995 by Ordinance 245.6, and restricts the content, size, height, width, and location of outdoor advertising signs.  More particularly, this section provides that outdoor advertising signs may have a maximum size of 380 square feet and a maximum height of fifty feet; it also states that "outdoor advertising signs shall only be permitted adjacent to Highway 98 East/Emerald Coast Parkway, which is a federal aid highway system."  (See doc. 101, exhs. 8 and 29).

Section IX was last amended in 1996 by Ordinance 245.7 and provides that signs not expressly authorized or exempted by the code are prohibited.  Section IX prohibits the construction of any "off-site sign, billboard or permanent outdoor advertising sign within the City of Destin at any location, including along Highway 98 East or the Emerald Coast Parkway, which are federal aid primary highway systems." (Doc. 101, exh. 8).  Further, section IX states that "[n]o off-site sign, billboard or permanent outdoor advertising sign (other than those signs which have already received city and DOT permits for construction) shall be constructed or erected after the date of enactment of this ordinance."  (Id.).  (See doc. 101, exhs. 8 and 30).

Ordinance 245.6 and Ordinance 245.7 each contain a repealer section, which states that "[a]ll ordinances, parts of ordinances, or any City Code provision in conflict herewith . . . are hereby repealed." (Doc. 101, exhs. 29, 30).  Although included in the ordinances as adopted by the city counsel and signed by the mayor at the time of enactment, the repealer provisions do not appear in the published version of the revised Ordinance 245.

[8]     Ordinance No. 03-10-LC provides for the creation of Section 16, Signs, of the City of Destin's Land Development Code, which in Section 16.03.00(X) expressly prohibits all off-premises signs within the City.

[9]     Docket Entry # 97 is the affidavit of Steve A. Galberaith, Action Outdoor's corporate representative. As noted above, and for the reasons given below, the court denies Destin's motion to strike Mr. Galberaith's affidavit; accordingly, in setting forth the facts the court cites Mr. Galberaith's affidavit, as appropriate.

101, exh. 2).  Action Outdoor disputes that its applications were incomplete upon their initial submission, but it is uncontroverted that the revised applications Action Outdoor submitted to the City shortly before 5:00 p.m. on May 19, 2003, were complete.[10]  (Doc. 98, ¶ 15; doc. 101, exh. 3 at 10).  At an evening meeting later on May 19, 2003, Destin's city council imposed an immediately effective moratorium on the filing, processing, or issuance of permits for billboards and outdoor advertising signs exceeding 200 square feet in size or 25 feet in height. (Doc. 98, ¶ 6; see also id., exh. A).

By letter dated May 20, 2003, Action Outdoor informed the City that the moratorium did not apply to its applications and requested that the City act promptly in reviewing them. (Doc. 98, ¶ 9; see also doc. 97, exh. K).  Destin advised Action Outdoor in a letter dated June 5, 2003, that Action Outdoor's applications would not be processed until the moratorium expired on August 1, 2003.  (Doc. 98, ¶ 9; see also doc. 97, exh. L).  After August 1 Action Outdoor again requested that Destin take immediate action on its applications, but Destin did not do so. (Doc. 98, ¶ 10).  On September 3, 2003, still having taken no action on Action Outdoor's applications, Destin enacted another billboard moratorium, which was authorized to be enforced until October 1, 2003.  (Doc. 103, ¶ 3). Action Outdoor initiated the instant law suit on September 17, 2003, invoking the court's jurisdiction pursuant to 28 U.S.C. §§ 1331, 1367, 2201, and 2202, and seeking, inter alia, declaratory and injunctive relief which would enable the company to erect its proposed signs.

On October 10, 2003, Destin granted the billboard application of Lamar Advertising Company ("Lamar"), a competitor of Action Outdoor, which Lamar had filed sometime prior to May 7, 2003. (Doc. 98, ¶¶ 16, 19; see also doc. 103, exh. G).  Action Outdoor asserts that the City, in violation of its moratorium, issued a sign permit to Lamar which allowed it to rebuild an existing sign face on a nonconforming sign at a cost of $40,000.00; Destin acknowledges that it issued a sign permit to Lamar but otherwise disputes this assertion.

---

[10]     In opposing Action Outdoor's motion for summary judgment Destin disputes that Action Outdoor's applications were complete prior to the city council's adoption of the moratorium on May 19, 2003.  For the purpose of its own motion for summary judgment, however, Destin does not contest the applications' completeness on that date.  (Doc. 105 at 3).

(Doc. 96 at 4; doc. 105 at 3).  Also disputed by Destin is Action Outdoor's allegation that rather than rebuild the existing sign face Lamar instead demolished the structure and thereafter constructed a new video screen billboard which cost approximately $300,000.00, is valued at over $3,450,000.00, and provides Lamar  with approximately $36,000.00 per month in revenue. (Doc. 98, ¶¶ 16, 17, 19; see also doc. 96 at 4; doc. 105 at 3). Additionally, Destin challenges Action Outdoor's assertion that it has expended at least 1080 man hours in pursuit of the five billboard permits, as well as $625.00 in application fees, $5500.00 in appeal fees, over $4000.00 in out-of-pocket expenses, $1000.00 in rental payments, and more than $59,000.00 in attorneys' fees. (Doc. 97, ¶ 11).

On October 20, 2003, Destin enacted its new sign code, Ordinance No. 03-10-LC. On the same date the City also enacted Resolution No. 3-21, in which it renounced the intention to readopt any provision of the sign code in effect prior to the adoption of Ordinance No. 03-10-LC which could be construed as being content-based or favoring one speaker over another or favoring commercial speech over noncommercial speech.[11] (Id., exh. 26).  By letter dated November 7, 2003, Destin denied Action Outdoor's five pending billboard permit applications, citing Section 16.03.00 of the newly enacted sign ordinance and its prohibition of the sort of off-premises signs for which Action Outdoor sought approval. (Doc. 97, exh. M).  On November 14, 2003, Destin further advised Action Outdoor that its applications were also denied under the old sign ordinance because it too prohibited the billboard signs at issue.  (Id., exh. N).  Following the denial of its applications Action Outdoor unsuccessfully pursued all administrative remedies.   (Doc. 98, ¶ 12).

On June 10, 2004, Action Outdoor filed its "Second Amended and Restated Petition for Mandamus and Complaint" complaint. (Doc. 66).  Action Outdoor asserts therein that certain provisions of Destin's old sign ordinance violate the First, Fifth, and/or Fourteenth

---

[11]        The heading of Resolution No. 03-21 refers to the City's renunciation of the intention to readopt any unconstitutional provisions of the old sign code.  In what appears to be a clerical error, however, the text of the resolution refers to renouncing the intention to readopt "any provision of Ordinance 03-10-LC," i.e., the newly enacted ordinance.  (Doc. 101, exh. 26 at 2).

Amendments of the U.S. Constitution[12] or are invalid because they conflict with state law. More particularly, in its fourteen-count amended complaint Action Outdoor alleges:

Count I:       the ordinance's restrictions on the erection of new off-site signs within the city of Destin constitute an impermissible restriction on commercial speech;

Count II:      the absence of permit application response-time limitations in the ordinance results in an unlawful prior restraint on free speech and violates the right to due process;

Count III:     the ordinance discriminates against noncommercial speech in favor of commercial speech because it restricts off-site signs (the only type of signs available for placement of noncommercial messages) but does not similarly restrict on-site signs displaying commercial messages;

Count IV:      the ordinance's exemption of certain types of signs from its permitting requirements is impermissibly content-based;

Count V:       the prohibition of all portable signs under the ordinance is not supported by any expression of governmental interests which further such a ban nor is the prohibition narrowly tailored to achieve any legitimate government interests;

Count VI:      the ordinance contains impermissible restrictions on the flying of flags;

Count VII:     the ordinance's prohibition of signs which display copy that is "harmful to minors" is vague and overbroad;

Count VIII:    the provision in the ordinance which requires the removal of all non-conforming signs without compensation to the sign owner conflicts with Florida law and thus is invalid;

Count IX:      the ordinance's prohibition against the reconstruction of damaged off-site signs is impermissibly content-based;

Count X:       the ordinance constitutes a comprehensive scheme whose unconstitutional provisions are not severable;

---

[12]     Action Outdoor also asserts state claims arising under Article I, Sections 2, 4, and 9, and Article X, Section 6(a) of the Constitution of the State of Florida.

Count XI:     denying Action Outdoor's applications for off-premise billboard permits while granting the application for the same type of permit to its competitor constitutes a violation of equal protection;

Count XII:     the ordinance contains contradictory, vague provisions which, because they prevent an applicant of common intelligence from discerning whether a particular off-site sign is permissible, are arbitrary and capricious and thus violative of due process;

Count XIII:     Action Outdoor has a clear legal right to the five sign permits for which it applied and the court, pursuant to its supplemental jurisdiction, should grant Action Outdoor's petition for writ of mandamus directing Destin to issue the disputed permits; and

Count XIV:     the denial of Action Outdoor's sign permit applications constitutes the taking and inverse condemnation of Action Outdoor's property without adequate compensation.

As relief Action Outdoor seeks a declaratory judgment as well as a mandatory injunction and/or a writ of mandamus directing the issuance of the disputed sign permits. It also seeks an award of attorneys' fees and expenses as well as judgment for damages as to its taking claim, in an amount to be proven at trial.[13]

## SUMMARY JUDGMENT STANDARD

A motion for summary judgment should be granted when "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56; see also Celotex Corp. v. Catrett,

---

[13]        More specifically, Action Outdoor seeks a declaratory judgment under Counts I through X that Destin's old sign ordinance is unconstitutional and void in its entirety; additionally, as to these counts Action Outdoor requests a mandatory injunction directing Destin to issue the five disputed sign permits.  As to Count XI, Action Outdoor seeks a declaratory judgment that Destin's inconsistent application of the sign ordinance to its competitor violates the equal protection clause and a mandatory injunction that directs the issuance of the sign permits.   With respect to relief under Counts XII and XIII, Action Outdoor prays, respectively, for a declaratory judgment that the old sign ordinance permits the type of signs it requests and that the conflicting provisions of the old ordinance are violative of due process; further, as to Count XII, Action Outdoor asks the court to enter a writ of mandamus directing the City to issue the disputed permits.  Action Outdoor also seeks an award of attorneys' fees and expenses pursuant to 42 U.S.C. § 1988 as to all counts and, as to Count XIV, judgment for damages in an amount to be proven at trial.

477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  A factual dispute is "`genuine' if the evidence is such that a reasonable jury could return a verdict for the nonmoving party."  Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S.Ct. 2505, 2510, 91 L.Ed. 2d 202 (1986).   A fact is "material" if it "might affect the outcome of the suit under the governing [substantive] law." Anderson, 477 U.S. at 248; Tipton v. Bergrohr GMBH-Siegen, 965 F.2d 994, 998 (11ᵗʰ Cir. 1992).

The movant carries the initial burden and must show that there is "an absence of evidence to support the nonmoving party's case." Celotex Corp., 477 U.S. at 325.  "Only when that burden has been met does the burden shift to the nonmoving party to demonstrate that there is indeed a material issue of fact that precludes summary judgment."  Clark v. Coats & Clark, Inc., 929 F.2d 604, 608 (11ᵗʰ Cir. 1991).   The nonmovant is then required "to go beyond the pleadings" and present competent evidence in the form of affidavits, depositions, admissions, and the like, designating "specific facts showing that there is a genuine issue for trial." Celotex Corp., 477 U.S. at 324.  Although evidence presented in opposition to the motion for summary judgment, and all factual inferences arising from it, must be viewed in the light most favorable to the nonmoving party, Adickes, 398 U.S. at 157; Jones v. Cannon, 174 F.3d 1271, 1281 (11ᵗʰ Cir. 1999), a general denial unaccompanied by any evidentiary support will not suffice. See, e.g., Courson v. McMillian, 939 F.2d 1479 (11ᵗʰ Cir. 1991); Hutton v. Strickland, 919 F.2d 1531 (11ᵗʰ Cir. 1991).  Moreover, the existence of a scintilla of evidence in support of the nonmovant's position is insufficient; the test is "whether there is [evidence] upon which a jury could properly proceed to find a verdict for the party producing it, upon whom the onus of proof is imposed." Anderson, 477 U.S. at 252.

## DISCUSSION

### Destin's Motion to Strike the Affidavit of Steve Galberaith

The court first addresses Destin's motion to strike the affidavit of corporate representative Steve A. Galberaith (doc. 97), which Action Outdoor submitted in support

of its motion for partial summary judgment.  Destin argues that Paragraphs 10 and 11[14] of of the affidavit should be stricken because they fail to meet certain requirements of Federal Rule of Civil Procedure 56(e)[15] or are inconsistent with Mr. Galberaith's deposition testimony.  (Doc. 106).

According to Destin, Mr. Galberaith has failed to set forth facts that would establish that his statement in Paragraph 10 regarding the costs of Lamar's billboard is based on personal knowledge or to attach documents evidencing the amounts alleged.  Therefore, Destin submits, the statement must be based on inadmissible hearsay and speculation.  In addition, Destin complains that Mr. Galberaith has failed to attach documentation in support of his statement in Paragraph 11 that Action Outdoor has expended significant sums in its quest to obtain the billboard permits.  Furthermore, according to Destin, the statement is directly contradicted by Mr. Galberaith's deposition testimony.[16]  In opposition, Action Outdoor argues that because Mr. Galberaith's affidavit is made on personal

---

[14]    Paragraph 10 states:
        Under the permit issued to Lamar on October 10, 2003, Lamar has replaced an existing nonconforming billboard with a video screen billboard at a cost of approximately $300,000, which has entitled Lamar to receive approximately $36,000 per month in revenues, causing the billboard to be worth in an excess of $3,450,000.

        Paragraph 11 states:
        To date, the plaintiff has expended at least 1080 man hours, $625.00 in permitting application fees, $5500.00 in appeal application fees, in excess of $4000.00 in out-of-pocket expenses, $1000.00 in rental payments and more than $59,000.00 in attorney's fees in connection with its efforts to obtain the five sign permits to which it is entitled.

[15]    In relevant part, Rule 56(e) provides that "[s]upporting and opposing affidavits shall be made on personal knowledge, shall set forth such facts as would be admissible in evidence, and shall show affirmatively that the affiant is competent to testify to the matters stated therein.  Sworn or certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith. . . ." Fed.R.Civ Pro. 56(e).

[16]    According to Destin, at his deposition Mr. Galberaith stated that the terms of the lease agreements made them contingent upon the securing of permits to construct the proposed billboards.  Thus, if the permits were not obtained Action Outdoor had no obligation to the lessors under the agreements; in addition, four of the five lessors indicated that they either did not recall receiving or did not receive any payments whatsoever under the lease agreements.  Finally, Destin asserts that during his deposition Mr. Galberaith was unable identify the number of man hours expended or even to estimate the total time and money spent to secure the permits; in addition, he testified that Action Outdoor's three principals did not record their time or keep an expense <u>account</u>.  Finally, Destin submits that although Mr. Galberaith testified that Action Outdoor kept expense <u>records</u>, none was produced at the deposition or attached to his affidavit.

knowledge, shows that he is competent to testify to the matters contained in the affidavit, and the affidavit sets forth facts that would be admissible into evidence, Destin's motion should be denied.  (Doc. 107).

For the following reasons, the court denies Destin's motion.  Mr. Galberaith states that all facts in his affidavit are within his personal knowledge.  He further states that he is one of three members of Action Outdoor Advertising who together have over fifty years experience in the outdoor advertising business and that the company owns and operates eighty-five billboard faces on forty different billboard structures.  The court is satisfied that such averments are sufficient to meet Rule 56(e)'s personal knowledge and competency requirements.  Moreover, because Mr. Galberaith's statement in Paragraph 10 does not reference statements made by other persons it is not hearsay.[17]  Additionally, Mr. Galberaith's statements in Paragraphs 10 and 11 make no reference to documents not attached to the affidavit and thus do not run afoul of Rule 56(e)'s requirement that "certified copies of all papers or parts thereof referred to in an affidavit shall be attached thereto or served therewith."

Moreover, "in considering a motion for summary judgment, a district court must consider all evidence before it and cannot disregard a party's affidavit because it conflicts to some degree with an earlier deposition." Kennett-Murray Corp. v. Bone, 622 F. 2d 887, 893 (5th Cir. 1980) (citations omitted)[18]; see also Tippens v. Celotex Corp., 805 F.2d 949, 953-54 (11th Cir. 1986).  That Mr. Galberaith's statements in his affidavit may be based on his personal observations alone or that such statements may not be identical with those provided in his earlier deposition does not render the evidence inadmissible.  See Rollins v. TechSouth, Inc., 833 F.2d 1525, 1530 (11th Cir. 1987).  Furthermore, insofar as Destin's challenge to the affidavit in fact goes to the appropriate weight that the evidence should

---

[17]    See Rule 801, Federal Rules of Evidence ("hearsay is a statement, other than one made by the declarant while testifying at the trial or hearing, offered in evidence to prove the truth of the matter asserted.").

[18]     In Bonner v. City of Prichard, 661 F.2d 1206, 1207 (11th C ir. 1981) (en banc), the Eleventh Circuit adopted as binding precedent all decisions of the former Fifth Circuit rendered prior to the close of business on September 30, 1981.

be afforded, this question is one that is strictly within the province of the trier of fact.  At the summary judgment stage the court may not weigh the evidence or evaluate the credibility of the witnesses.  Finally, as noted in Rule 56(e), when a motion for summary judgment is supported as provided in the Rule, it is up to the adverse party to set forth specific facts, by affidavit or otherwise, which show there is a genuine issue for trial.  With respect to the particular factual contentions at issue here, Destin has largely failed to do so.[19]

**Mootness**

Primary among Destin's numerous arguments in opposition to the plaintiff's motion for partial summary judgment and in support of its own motion for summary judgment is that Action Outdoor's claims have been mooted by the City's October 2003 enactment of a revised sign ordinance.  Because the issue of mootness may implicate the court's authority to hear this case, it must be addressed as a preliminary matter.

This court's jurisdiction to consider Action Outdoor's claims is limited by Article III of the United States Constitution, which requires federal courts to consider only actual cases and controversies. U.S. Const., Art. III; Lujan v. Defenders of Wildlife, 504 U.S. 555, 559, 112 S.Ct. 2130, 2136, 119 L.Ed.2d 351 (1992).  The cases or controversies limitation must be strictly observed.  See National Advertising Co. v. City of Miami, 402 F.3d 1329, 1332 (11th Cir. 2005) ("City of Miami") (citing Allen v. Wright, 468 U.S. 737, 750, 104 S.Ct. 3315, 3324, 82 L.Ed.2d 556 (1984)).  Part of the cases or controversies limitation includes the doctrine of mootness, which must be satisfied before the court may decide the merits of a case. See Granite State Outdoor Advertising, Inc v. City of Clearwater, Fla., 351 F.3d 1112, 1119 (11th Cir. 2003)  ("City of Clearwater"), cert. denied, ___ U.S.____, 125 S.Ct. 48, 160 L.Ed.2d 17 (2004).  "A case is moot when the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Id. at 1119 (internal quotation marks and citation omitted); see also Crown Media, LLC v. Gwinnett County,

---

[19]    For example, as to Paragraph 10, Destin has not set forth facts by affidavit or otherwise that would tend to create a genuine issue for trial; the same is generally true with respect to Paragraph 11, with perhaps the exception of the terms of the lease agreements and certain statements by the lessors in their depositions. (See doc. 106 at 2-3).  In any event, for purposes of granting summary judgment in Destin's favor the court accepts as true the facts set forth by Mr. Galberaith in his affidavit.

Ga., 380 F.3d 1317, 1324 (11th Cir. 2004).  In other words, "a case is moot when it no longer presents a live controversy with respect to which the court can give meaningful relief.  If events that occur subsequent to the filing of a lawsuit or an appeal deprive the court of the ability to give the plaintiff or appellant meaningful relief, then the case is moot and must be dismissed."  Al Najjar v. Ashcroft, 273 F.3d 1330, 1335-36 (11th Cir. 2001) (per curiam).  A moot case "cannot present an Article III case or controversy and the federal courts lack subject matter jurisdiction to entertain it." Id. at 1336.  Indeed, because mootness is jurisdictional, dismissal is mandated, and "[a]ny decision on the merits of a moot case or issue would be an impermissible advisory opinion."  Id.

     Voluntary Cessation

     The voluntary cessation doctrine is an exception to the general principle that a case is mooted by the termination of the allegedly unlawful behavior. See Troiano v. Supervisor of Elections in Palm Beach County, Florida, 382 F.3d 1276, 1282 (11th Cir. 2004). Under this rule, the case is not mooted and the court thereby not deprived of jurisdiction because of "the possibility that the defendant could merely return to his old ways . . . ." Coral Springs Street Systems, Inc. v. City of Sunrise, 371 F.3d 1320, 1328 (11th Cir. 2004) ("City of Sunrise") (citing Sec'y of Labor v. Burger King Corp., 955 F.2d 681, 684 (11th Cir. 1992)). There is, however, "an important exception to this important exception." Troiano, 382 F.3d at 1282. "The case may nevertheless be moot if the defendant can demonstrate that there is no reasonable expectation that the wrong will be repeated." Id. (citation and internal quotation marks omitted). In a case in which the defendant is a governmental entity or official, there is a rebuttable presumption that the objectionable behavior will not recur. See City of Sunrise, 371 F.3d at 1328-29.

     A change in circumstance or change in the law, such as repealing or amending a zoning ordinance, can render a controversy moot.[20] See City of Miami, 402 F.3d at 1332;

---

[20]    The repeal of a statute may not, however, moot a constitutional challenge in a case in which the plaintiff seeks damages rather than declaratory or prospective injunctive relief. See City of Clearwater, 351 F.3d at 1119; Coalition for the Abolition of Marijuana v. City of Atlanta, 219 F.3d 1301 at 1310. In this case, Action Outdoor only seeks damages as to its taking and inverse condemnation claim, requesting declaratory and injunctive relief as to all of its remaining claims.

see also City of Sunrise, 371 F.3d at 1329 (stating that "[g]enerally, a challenge to the constitutionality of a statute is mooted by repeal of the statute"); Coalition for the Abolition of Marijuana Prohibition v. City of Atlanta, 219 F.3d 1301, 1310 (11th Cir. 2000). The Supreme Court generally has "declined to hold moot a challenge to a repealed law only when the law is reasonably likely to be reenacted or when it is replaced by another constitutionally suspect law." City of Sunrise, 371 F.3d at 1330; see also Coalition for the Abolition of Marijuana Prohibition, 219 F.3d at 1310 (noting that to the extent that features challenged as unconstitutional in a repealed statute or ordinance remain in the superseding legislation and changes to the law "have not so fundamentally altered the statutory framework as to render the original controversy a mere abstraction, the case [is] not moot."). Recently, the Eleventh Circuit observed that in assessing the applicability of the voluntary cessation doctrine the trial court should focus on whether there is a substantial likelihood that the government will reenact its prior statute, not on the government's motivation or purpose in amending its laws. See City of Miami, 402 F.3d at 1333, 1334.

In the instant case, Action Outdoor does not argue that Destin may reinstate the old sign ordinance nor does it challenge the constitutionality of any provisions in the revised sign ordinance, including the prohibition against outdoor advertising signs. In any event, the court finds that the doctrine of voluntary cessation does not apply to prevent a finding of mootness. Minutes of Destin's city council meetings show that the council began considering the advisability of amending the sign code in January 2001. (See doc.101, exh. 9 at 1). Minutes of an August 2002 meeting reflect that the City had employed attorney Mark Miller (id., exh. 14 at 6), as well as a law school professor, for the purpose of revising the Destin sign ordinance (id., exh. 16, ¶¶ 5, 6). Additionally, the minutes of a February 2003 council meeting show that the council approved a transfer of funds to pay the balance of Mr. Miller's expenses associated with his "update" of the sign ordinance. (Id., exh. 15 at 3-4). Furthermore, between August 2002 and April 9, 2003 (the date Action Outdoor initially filed its applications), Mr. Miller and the expert consultant the City had hired to redraft the ordinance had already "generated draft revisions to the Old Sign Code which

were circulated among staff for review and comment." (Doc. 101, exh. 16, ¶¶ 5, 6).[21]  Also, in October 2003 the city council passed Resolution No. 3-21, in which Destin renounced the intention to readopt any potentially unconstitutional provisions of the old sign code.  For these reasons, the court concludes there simply is no evidence of a "substantial likelihood" that Destin will reenact the old sign code and thus no reason to expect that the alleged violations will recur.  See City of Miami, 402 F.3d at 1333, 1334; see also Seay Outdoor Advertising, Inc. v. City of Mary Esther, Florida, 397 F.3d 943, 947 (11th Cir. 2005); City of Sunrise, 371 F.3d at 1332-33; Revolution Outdoor Advertising, Inc., v. City of Casselberry, No. 00-10863, 234 F.3d 711 (11th Cir. 2000) (unpublished opinion). Thus the court finds that the voluntary cessation doctrine does not preclude a finding of mootness in this case.

Vested Rights

The gist of Action Outdoor's opposition to Destin's arguments on the issue of mootness is that its claims remain justiciable because the company has acquired vested property rights in the sign permits.  (Docs. 103, 123).

A party's vested property right may constitute an enforceable entitlement in the face of subsequent changes to the law and "may keep a constitutional challenge to a repealed sign ordinance from becoming moot under federal law." Crown Media, 380 F.3d at 1324 (citing City of Sunrise, 371 F.3d at 1333).  Whether a party has vested property rights in a sign permit is a question of state law.  Id.  To claim a vested right under Florida law, the plaintiff must show either: "(1) that it has reasonably and detrimentally relied on existing law (equitable estoppel); or (2) that [the government] has acted in a clear display of bad faith."

---

[21]       Action Outdoor objects to this statement, which was made by Destin's community development director Gerald Mucci in an affidavit, on the ground Destin failed to attach sworn or certified copies of the drafts, as required by Rule 56(e). (Doc. 101, exh. 16).

Action Outdoor's objection is overruled.  Under a strict reading of Rule 56(e), the attachment of the drafts to Mr. Mucci's affidavit may indeed be required.  Nevertheless, the court concludes that simply for the purpose of showing that the drafts were created and circulated between August 2002 and April 9, 2003, the drafts need not be attached.  Action Outdoor has not challenged the contents of the drafts or the veracity of Mr. Mucci's statement, in which he makes no reference to the contents. Cf. Catawba Indian Tribe v. South Carolina, 978 F.2d 1334, 1340 n. 5 (4th Cir.1992) (denying argument that affidavit was insufficient for failure to attach referenced documents because, inter alia, challenging party did not contest content of documents to which affidavit referred).

Seay, 397 F.3d at 948 (citing City of Sunrise, 371 F.3d at 1334). To establish equitable estoppel, the plaintiff must show that "it has incurred substantial expense in reasonable reliance on existing law." Seay, 397 F.3d at 948 (citing City of Sunrise, 371 F.3d at 1338). Bad faith may be found where the government has "changed the law in a last-ditch effort to avoid granting a permit or license to a plaintiff." City of Sunrise, 371 F.3d at 1337 (surveying Florida cases in which a finding of vested rights was made arising from the government's acts of bad faith).

According to Action Outdoor, under the doctrine of equitable estoppel it has an enforceable entitlement to issuance of the permits notwithstanding the enactment of a new sign ordinance because in pursuing the five applications at issue it made significant expenditures of time and money in reliance on the old sign ordinance.  Further, Action Outdoor contends that it is entitled to claim vested rights in the sign permits because Destin acted in bad faith.  That Destin did so is evidenced by its immediately adopting a moratorium in response to Action Outdoor's filing of its five applications, refusing to process the applications even when no moratorium was in effect, not amending its sign ordinance until six months after the applications were filed, denying the applications only after the new ordinance had been adopted, and improperly approving the sign permit application of its competitor.

The court first considers whether equitable estoppel lies in this case.  Action Outdoor has acknowledged that execution of its lease agreements is contingent upon obtaining the sign permits at issue.  (Doc. 101, exh. 33 at 35).  In a sign ordinance case in which the subject billboard has not been built and, under the terms of the lease agreement the applicant has no obligation to the lessor unless the billboard is constructed, there is no detrimental reliance which may give rise to equitable estoppel. See City of Sunrise, 371 F.3d at 1338; Seay, 397 F.3d at 948. Nevertheless, the court shall accept that the time and money expended by Action Outdoor constitute a "substantial" expense. See City of Sunrise, 371 F.3d at 1334.  The court finds, however, that neither was laid out in reasonable reliance on the old sign code. See Seay, 397 F.3d at 948. True, as previously noted, the zoning regulation and the old sign ordinance (specifically,  Sections IX and XII

of Ordinance 245) may fairly be characterized as lacking consistency regarding the applicable restrictions on billboard signs. (See n. 7, supra).   Even so, Section IX includes specific, unambiguous language which clearly prohibits in any location of the City the type of signs Action Outdoor sought to erect. Section IX was amended by Ordinance 245.7 in 1996 and constitutes the most recent expression of legislative intent on the permissibility of outdoor advertising signs within Destin.   Despite this provision explicitly banning billboard signs Action Outdoor elected to pursue the permits.   Particularly given that it did so with the advice of counsel (see doc. 101, exh. 33 at 69) –  whose expenses make up the bulk of the company's asserted costs – the court concludes that Action Outdoor's reliance on the old sign ordinance simply was not reasonable. Further, given the obvious inconsistencies in the old sign code it was not reasonable for Action Outdoor to rely on the old sign ordinance absent at least some modest inquiry by counsel into the relevant public record and proceedings.

Additionally, in order for an applicant to acquire a vested right in a building permit, the Florida courts have required that he had "no reason to know that the laws [were] likely to change." See City of Sunrise, 371 F.3d at 1334.  That is not the case here.  Although the court will accept that the plaintiffs had no actual knowledge of the pendency of the revisions to the sign code prior to filing their applications on April 9, 2003,[22]  as noted, minutes of city council meetings from as early as August 2002 reflect that special counsel had been employed for the purpose of revising the sign ordinance and that such work was nearing completion in February 2003.[23] Given the ready availability of this information in

---

[22]      Counsel represented at oral argument that his clients were not aware of the pendency of the new sign ordinance, and for the purpose of the instant review the court accepts that there is no disputed question of fact on this issue.  Nevertheless, the court notes its impression that a reasonable jury likely would find that the following statements, written in a letter by Mr. Galberaith to a potential lessor on February 18, 2993, were indeed evidence of such knowledge:  "Right now there is a window of opportunity to make this happen.  We're not sure how long the opportunity will be available and can only advise everyone that sometime in the near future the possibility will no longer exist."  (Doc. 101, exh. 32).

[23]      Furthermore, as noted, Section 8 of Ordinance 245.7 repeals any ordinance, or part thereof, with which it conflicts. (Doc. 101, exh. 30). Even if this provision was not published as part of the revised Ordinance 245, it is part of the public record to which Action Outdoor had access.

the public domain, the court finds that Action Outdoor cannot claim that it had no reason to know of pending changes to the sign ordinance that could affect its permits. See Smith v. City of Clearwater, 383 So.2d 681 (Fla.Dist.Ct.App.1980) (denying applicants right to their development plans because they had previous notice of impending change to building code). Accordingly, for the reasons stated, the court finds no basis for equitably estopping the City from denying the sign permits at issue because Action Outdoor has failed to establish that it acted in reasonable reliance on the old sign ordinance.

The court further finds that Action Outdoor has not shown that Destin acted in a clear display of bad faith. Florida courts have found that evidence of bad faith exists where the

> municipality did not change the relevant law until after the plaintiff had both sued and obtained a writ from a state court of general jurisdiction, or because the county deliberately withheld a permit it otherwise would have awarded until after a voter-approved moratorium went into effect.

City of Sunrise, 371 F.3d at 1336.

In this case, Destin did not change its sign ordinance until approximately six months after Action Outdoor initially filed suit.[24] Action Outdoor has not, however, obtained a writ directing the issuance of its permits. See City of Sunrise, 371 F.3d at 1336. Further, although Destin enacted moratoria prohibiting billboard signs of a certain size after Action Outdoor submitted its applications; refused to process those applications during the pendency of (and even during lapses between) the moratoria; and only denied the applications after enactment of the revised ordinance, at no time did the City withhold permits it otherwise would have granted under the old ordinance. In fact, as discussed, at the time Action Outdoor initially filed its applications Section IX, as amended by Ordinance 245.7, prohibited in all areas of the City billboard signs such as those which the company

---

25    The court notes that in City of Miami, in the context of deciding whether the doctrine of voluntary cessation was applicable the Eleventh Circuit found no evidence of bad faith, i.e., the intent to deprive the court of jurisdiction, where the government likewise did not amend its ordinance until six months after suit had been commenced. See City of Miami, 402 F.3d at 1329, n. 6; see also Revolution Outdoor Advertising, Inc. v. City of Casselberry, No. 98-01233 (M.D.Fla. 2000) (finding no evidence of bad faith where ordinance was amended four months after suit filed), aff'd, Revolution Outdoor Advertising, Inc., v. City of Casselberry, No. 00-10863, 234 F.3d 711 (11th Cir. 2000).

sought to erect.  Indeed, according to Mr. Mucci, to his knowledge no permits for the construction of new outdoor advertising signs have been issued since the enactment of Ordinance 245.7 in March 1996.  (Doc. 101, exh. 16, ¶ 7).  In short, the sequence of events in this case does not suggest that the City sought to "change[ ] the law in a last-ditch effort to avoid granting" the permits sought by Action Outdoor. City of Sunrise, 371 F.3d at 1337. Rather, as has been noted, the record reflects that the City began a deliberative process to revamp its sign code in January 2001, when it first contemplated the need for revision; that by August 2002 it had taken further steps towards drafting a new code by hiring special counsel; and that by February 2003 the process was concluding as the City made arrangements for final payment for the costs of the revision.  Furthermore, during the period from August 2002 to April 2003 drafts of the proposed revisions had been created and distributed to City staff members for their review.

Nor does the evidence reflect that Destin acted in bad faith by approving Lamar's sign permit application while denying Action Outdoor's.  While the "selective and erroneous enforcement of an arguably unconstitutional provision of the law" may give rise to a finding of bad faith under Florida law, see City of Sunrise, 371 F.3d at 1337 (citing City of Margate v. Amoco Oil Co., 546 So.2d 1091 (Fla.Dist.Ct.App. 1989)), in this case the City did not refuse to issue permits to Action Outdoor which it should have granted under the old ordinance.  Moreover, the City did not act improperly in granting a permit to Lamar based on a settlement agreement into which it and Lamar had entered in 1996 following the destruction of certain of Lamar's billboards during Hurricane Opal in 1995.  (See doc. 101, exh. 43).  Action Outdoor complains that the City recognized the engineering deficiencies in the sign structure requested by Lamar by initially denying Lamar's application and that even the City's own legal counsel took the position that the 1996 agreement did not support granting the permit.  (Doc. 103 at 16-17; exhs. E, F, G, H).  The court finds, however, that the City reasonably could have concluded that Lamar possessed at least a colorable claim of entitlement to the permit pursuant to the 1996 settlement agreement.  Accordingly, that the City elected to resolve the ongoing dispute by granting the permit, with certain

conditions favorable to Destin (see doc. 101, exh. 44), rather than to continue to oppose it in administrative or other proceedings whose outcome was uncertain, does not constitute evidence of bad faith. Cf. E & T Realty v. Strickland, 830 F.2d 1107, 1114 (11th Cir. 1987) (stating that a showing of intentional discrimination is necessary to make out an equal protection claim; mere error, mistake of judgment, or arbitrary administration of ordinance is not sufficient).

Action Outdoor's reliance on National II and Crown Media is misplaced.  In National II, the government, in a blatant effort to avoid granting the disputed permit and to divest the court of jurisdiction, amended its ordinance six weeks after suit was commenced, then immediately moved for dismissal, "making plain its reason for the belated change in the challenged ordinance." City of Sunrise, 371 F.3d at 1340.  Under such circumstances, i.e., when a municipality denies a permit based upon a then-existing unconstitutional law and hastily enacts a new ordinance, the permit applicant is denied a "fair chance" to rely on the law existing at the time of the application. See City of Sunrise, 371 F.3d at 1339 (discussing National II). Accordingly, the court concluded that even after the enactment of a new, constitutionally sound law, the applicant was entitled to the issuance of the permit under the old law because, given the sequence of events indicating the government's lack of good faith, his right to the permit had vested. The sequence of events in the instant case, however, does not resemble that in National II.[25]  Based on the facts before it, as outlined above, this court discerns no bad faith on the part of Destin.

Likewise, Crown Media is distinguishable on its facts.  In that case, the court held that under Georgia law an outdoor advertising company's challenges to the constitutionality of a county's original and amended sign ordinances were not rendered moot by enactment of a new sign ordinance.[26]  Unlike the plaintiff in Crown Media, Action Outdoor can

---

[25]     Nor does it resemble the facts of Harris v. State Ex.Rel. Webster, 159 Fla. 195, 31 So.2d 264 (Fla. 1947), upon which Action Outdoor also relies.  In that case the Florida Supreme Court ordered the government to grant the disputed liquor license because, in direct response to an order by a lower court requiring its issuance, it had enacted a new, valid ordinance which prohibited the license. Id. at 266.

[26]     In Crown Media the county issued sign and building permits to the plaintiff under its "original" sign ordinance, and the plaintiff proceeded to construct its billboard.  Although the billboard was not built in precise

demonstrate no vested property rights in the disputed permits as no permits were ever issued.  Furthermore, under Florida law, even the "possession of a building permit does not create a vested right." City of Boynton Beach v. Carroll, 272 So.2d 171, 173 (Fla.Dist.Ct.App.1973).  Additionally, unless equitable estoppel applies, "a permit may be revoked where the zoning law [has been] amended" after issuance of the permit.  Thus, "[i]t follows . . . a mere application for a building permit cannot create a vested right." Id.

For all of the foregoing reasons the court concludes that Action Outdoor has failed to establish its entitlement to vested rights in this case, either through the application of equitable estoppel or a showing of bad faith on the part of the City.

Severability

Challenges to an ordinance may still be justiciable if the revised ordinance contains the same constitutional defects as its predecessor. "'[A] superseding statute or regulation moots a case only to the extent that it removes the challenged features of the prior law.'" Seay, 397 F.3d at 949. If the challenged provisions of the superseding ordinance are severable from those in the old ordinance under which the application was actually denied, however, any assessment by the court as to the validity of those provisions in the new

---

compliance with the plans or the sign ordinance, the county issued certificates of occupancy and completion. Shortly thereafter the county amended its sign ordinance and it later adopted a new code; the plaintiff's sign did not comply with the restrictions imposed by either the amended or the new ordinance. After the county complained about the sign and eventually sought to remove it, the plaintiff sued, attacking the constitutionality of the original and amended ordinances.  At summary judgment the district court found the challenge to the amended ordinance was mooted by adoption of the new code and that the plaintiff had no vested property rights in either its sign or the permits issued under the original ordinance.

On appeal, the Eleventh Circuit reversed, holding that under the particular facts of the case neither challenge was mooted by the enactment of the new sign ordinance.  The court reasoned that if the original ordinance was constitutional, the plaintiff seemingly had no vested rights in the sign itself, insofar as the sign was noncompliant with the code and permits. Under Georgia law, however, the plaintiff should have been given a reasonable opportunity to bring the sign into compliance with its permits, in which it clearly did have vested rights.  Further, if the original ordinance was unconstitutional, the county could not rely on it to force removal of the sign; additionally, restrictions in the sign and building permits stemming from the code would be unenforceable.  Thus, the court concluded, the scope and existence of the plaintiff's property rights in its permits and sign and the extent to which the vested prior to enactment of the new ordinance could not be determined without ascertaining the constitutionality of the original code.  Similarly, the court found the adoption of the new ordinance did not moot the plaintiff's challenge to the amended ordinance because, if found unconstitutional, its restrictions would be unenforceable and also would provide no basis for forcing removal of the sign.

Case No. 3:03cv426/MCR

ordinance would constitute an advisory opinion. Id. at  949, 951; City of Sunrise, 371 F.3d at 1347.

"Severability of a local ordinance is a question of state law . . . ." Solantic, LLC v. City of Neptune Beach, 410 F.3d 1250, 1269, n. 16 (11th Cir. 2005) (citing City of Lakewood v. Plain Dealer Pub'g Co., 486 U.S. 750, 772, 108 S.Ct. 2138, 100 L.Ed.2d 771 (1988)). Florida law clearly favors the severance of invalid portions of law, where possible. Id. "When a part of a statute is declared unconstitutional the remainder of the act will be permitted to stand provided:  (1) the unconstitutional provisions can be separated from the remaining valid provisions, (2) the legislative purpose expressed in the valid provisions can be accomplished independently of those which are void, (3) the good and the bad features are not so inseparable in substance that it can be said that the Legislature would have passed the one without the other and, (4) an act complete in itself remains after the invalid provisions are stricken."  Solantic, 410 F.3d at 1269 (citations omitted).

In the instant case, the prohibition in Section IX of the old sign ordinance against all "off-site  signs" in the City also is present in Section 16.03.00(X) of the revised ordinance.[27] This provision can be separated from the remaining valid provisions, since it is a discrete section of the ordinance.  Further, the regulatory purposes of the revised sign code, such as lessening hazards to pedestrians and vehicular traffic and promoting aesthetics, could be accomplished even without the outdoor advertising sign ban. (See doc. 101, exh. 6, Section 16.00.00). Without the prohibition on billboards the sign code still remains a "comprehensive and coherent system of sign regulation."  City of Sunrise, 371 F.3d at 1348.  In addition, there is no basis for concluding that the city council would not have enacted the new sign code without the billboard prohibition. Id. (stating it was "wholly implausible that the City would have preferred no sign ordinance at all to one that contains all the current parts of the Amended Sign Code other than the suspect content regulations.").  Further, the revised sign code would be complete in itself absent Section

---

[27]     As noted, Action Outdoor does not challenge the constitutionality of any provisions of the revised sign ordinance, including the City-wide prohibition of off-site signs.

16.03.00(X).  Additionally, the ordinance explicitly provides for severability, in the event any provision should be declared unconstitutional: "Each separate provision of this ordinance is deemed independent of all other provisions herein so that if an portion or provision of this ordinance is declared invalid, all other provisions thereof shall remain valid and enforceable." (Doc. 101, exh. 6, Section 7).  Thus, in the event of a challenge, the City has articulated the legislative desire to maintain as much of its ordinance as possible; moreover, under Florida law, the "legislatively expressed preference for the severability of voided provisions is persuasive," although not binding.  City of Sunrise, 371 F.3d at 1349 (citing Moreau v. Lewis, 648 So.2d 124, 127 (Fla. 1995)).  Finally, "even if [the court] were to rule the remaining challenged portions to be unconstitutional, it would not make a whit of difference to [Action Outdoor]; it would not have a right to a sign permit whether these provisions [of the revised code] are valid or not."  Id. at 1349.  The court therefore need not pass on their constitutionality because "doing so would have no impact on the plaintiff's interests." Id.  Accordingly, the court finds severability without the need to resolve whether any of the challenged provisions are indeed unconstitutional. See id. at 1348-49; Seay, 397 F.3d at 950-51.

In sum, for all of the foregoing reasons, this court finds no basis upon which to find that the doctrine of voluntary cessation should apply to prevent a finding a mootness or that Action Outdoor has a vested right to issuance of the permits it seeks, arising either under the doctrine of equitable estoppel or from a clear showing of Destin's bad faith. Moreover, any arguably unconstitutional provision in the revised sign ordinance which has been carried forward from the old sign code is severable. The court therefore concludes that Counts I through XIII of the "Second Amended and Restated Petition for Mandamus and Complaint," as to which Action Outdoor seeks injunctive relief only, have been mooted by Destin's enactment of its revised sign ordinance.[28]  Accordingly, these counts should

---

[28]        In its supplemental brief Action Outdoor argues, without explication, that in the event the court determines that its First Amendment challenges to the old sign ordinance are moot, its claims for denial of equal protection (Count XI) and mandamus (Count XII) remain, as they are "independent claims which must be adjudicated."  (Doc. 123 at 9).  The court notes that as to both claims Action Outdoor does not seek monetary damages but rather only relief which would enable it to obtain the permits it desires.  The court disagrees that either of these two claims remain justiciable.  Action Outdoor has failed to establish that it has

be dismissed with prejudice for lack of subject matter jurisdiction.  Count XIV, Action Outdoor's taking claim, likewise shall be dismissed, but without prejudice, for lack of subject matter jurisdiction due to lack of ripeness.[29]  Finally, as the court has dismissed all claims over which it had original jurisdiction, it declines to exercise supplemental jurisdiction over Action Outdoor's state law claims, which shall be dismissed without prejudice.  See Rowe v. City of Fort Lauderdale, 279 F.3d 1271, 1288 (11th Cir. 2002).

Accordingly, it is hereby ORDERED:

1.    Defendant's motion to strike (doc. 106) is DENIED.

2.    Defendant's motion for summary judgment (doc. 99) is GRANTED.  Plaintiff's federal claims as set forth in Counts I through XIII are DISMISSED with prejudice; its state

---

acquired any protected property interests in the disputed permits, and the court would be unable to grant the mandatory injunction or writ of mandamus which Action Outdoor seeks as relief. See Al Najjar, 273 F.3d at 1335-36.

Even if Action Outdoor's equal protection claim were not mooted by the enactment of a new sign code, the court nevertheless finds that the claim is without merit. As discussed previously, Action Outdoor has failed to show that Destin's conduct in granting Lamar's permit while denying Action Outdoor's amounts to bad faith; indeed, nothing in the evidence before the court supports a conclusion that the City intentionally discriminated against Action Outdoor.  Additionally, although both the plaintiff and the defendant are outside advertising companies seeking to do business in Destin, Action Outdoor has not shown that it was similarly situated to Lamar.  Unlike Action Outdoor, Lamar had a colorable, nonfrivolous claim of entitlement to issuance of the permit it sought in light of the 1996 settlement agreement it reached with the City. See E & T Realty, 830 F.2d at 1111 (stating that a "local government does not violate the equal protection clause by granting a permit to an applicant who has a nonfrivolous claim of entitlement under the pertinent legislation and by denying a permit to another applicant who clearly is unentitled to it: the two applicants are not similarly situated.").

[29]    Action Outdoor's taking claim does not appear to be ripe.  Cases involving constitutional issues must be ripe in order for a federal court to have subject matter jurisdiction.  See Greenbriar Ltd. v. City of Alabaster, 881 F.2d 1570, 1573 (11th Cir.1989). In order to be ripe, a taking claim requires surmounting two hurdles:  (a) the "final decision" hurdle;  and (b) the "just compensation" hurdle.  See Villas of Lake Jackson Ltd. v. Leon County, 121 F.3d 610, 614 (11th Cir. 1997). In order to meet the former requirement, an aggrieved party must appeal an administrative decision when the ordinance explicitly contains an appeal process. See National Advertising Co. v. City of Miami, 402 F.3d 1335 (11th Cir.  2005).  To meet the latter requirement, all state procedures for just compensation must be utilized.  See Reahard v. Lee County, 30 F.3d 1412, 1416 (11th Cir. 1994).  Florida allows for an aggrieved party to pursue an inverse or reverse condemnation action so that a party may recover just compensation for a taking. See id. at 1417.

The record in this case indicates that Action Outdoor appealed the denial of its sign permit applications and thus exhausted the "final decision hurdle."   Villas of Lake Jackson; see also National Advertising Co., supra.  There is nothing before the court, however, which reflects that Action Outdoor pursued any state procedure to receive just compensation.  Absent Action Outdoor's having pursued such procedures, its taking claim is not ripe and the court lacks subject matter jurisdiction to hear it. Count XIV shall therefore be dismissed, without prejudice.

claims contained therein are DISMISSED without prejudice.  Count XIV is DISMISSED without prejudice.

3.      Plaintiff's motion for partial summary judgment (doc. 95) is DENIED.

4.      Consistent with this order, the clerk of court is directed to enter summary judgment in favor of defendant City of Destin, Florida.  Plaintiff Action Outdoor Advertising JV, LLC, shall take nothing further by this action and hence goes without day.

**DONE and ORDERED** this 23rd day of September, 2005.


s/ *M. Casey Rodgers*

**M. CASEY RODGERS**
**UNITED STATES DISTRICT JUDGE**